1
2
3
4
5
6
7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EQUAL EMPLOYMENT OPPORTUNITY
     COMMISSION,
11
                    Plaintiff,              MISC No. S-05-0486 GEB GGH
12
              vs.
13
     WINCO FOODS, INC.,                     MEMORANDUM ORDER
14                                          and PROTECTIVE ORDER
                    Defendant.
15   _____/

16          Plaintiff Equal Employment Opportunity Commission (EEOC) seeks enforcement

17   of its June 9, 2005 subpoena issued and served upon defendant WinCo Foods, Inc. (WinCo).

18   Pursuant to Commission Charge No. 376-2004-00521, EEOC is investigating charges of gender

19   discrimination filed by Karen Armijo under Title VII of the Civil Rights Act of 1964, as

20   amended, 42 U.S.C. § 2000e et seq., and pursued under the Pregnancy Discrimination Act

21   (PDA), 42 U.S.C. § 2000e(k).[1]

22

23          [1] 42 U.S.C. § 2000e(k) provides in pertinent part:  "The terms 'because of sex' or 'on the
     basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth,
24   or related medical conditions; and women affected by pregnancy, childbirth, or related medical
     conditions shall be treated the same for all employment-related purposes, including receipt of
25   benefits under fringe benefit programs, as other persons not so affected but similar in their ability
     or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit
26   otherwise. . . ."

                                          1

1    EEOC makes this application for judicial enforcement of its administrative

2  subpoena pursuant to 42 U.S.C. §§ 12117(a) and § 2000e-9 of the Civil Rights Act, and 29

3  U.S.C. § 161 of the National Labor Relations Act (NLRA).  EEOC filed this on November 4,

4  2005; WinCo timely filed an opposition and EEOC filed a reply.  This matter is assigned to the

5  undersigned pursuant to E. D. Cal. L. R. 72-302(c)(1).  The motion came on regularly for hearing

6  on March 16, 2006; Marcia L. Mitchell represented plaintiff; Samuel T. McAdam represented

7  defendant.

8  I.  BACKGROUND

9    WinCo's "Pregnancy Disability Accommodation Policy" states in pertinent part

10  that "WinCo will attempt to accommodate a request from a pregnant employee who provides a

11  written medical opinion from [her] treating physician recommending a less strenuous or

12  hazardous position during the employee's pregnancy or after care. . . . If the employee is unable

13  to work at [her] normal position or a modified position is unavailable, the employee must request

14  a leave of absence in writing."  Ehrlich Decl., Attchmt. 3, p. 4.

15    Karen Armijo commenced work with WinCo at its Folsom, California store on

16  December 17, 2003.  She was employed on an hourly basis as an "all-purpose Clerk" or grocery

17  department checker, a position that requires frequent lifting of objects weighing up to twenty

18  pounds, and occasional lifting up to fifty pounds.  Ehrlich Decl., Attchmt. 3, pp. 1, 6-7.  On April

19  20, 2004, Ms. Armijo requested a Medical Leave for the period October 3, 2004 to December 26,

20  2004, due to the anticipated birth of her child.  On April 29, 2004, Ms. Armijo provided a letter

21  from her treating physician restricting her to lifting no more than fifteen pounds.  Id., at p. 2.

22  WinCo states it was unable to accommodate Ms. Armjo's request for "light-duty" work and,

23  "[i]n accordance with WinCo Foods Pregnancy Disability Accommodation Policy [], on May 3,

24  2004, the Human Resources Benefits Department sent Ms. Armijo a letter informing her of her

25  \\\\\

26  \\\\\

1   rights for protection under the California Family Rights Act [],"[2] and instructed Ms. Armijo to

2   request an immediate leave of absence. Id., at pp. 1, 2.

3           On June 3, 2004, Ms. Armijo filed concurrent claims with EEOC and the

4   California Department of Fair Employment and Housing (FEHA) alleging she was terminated by

5   WinCo on May 4, 2004 as a result of gender discrimination. Ehrlich Decl., at p. 2, ¶ 4; Attchmt.

6   1, p. 1. EEOC sent Winco a Notice of Charge of Discrimination on June 3, 2004. Winco

7   responded July 10, 2004, denying the charge and asserting that Ms. Armijo remained an active

8   employee on leave of absence. Ehrlich Decl., at p. 2, ¶¶ 5, 6; Attchmts. 2, 3.

9           In response to EEOC's initial request for information, WinCo sent, on August 17,

10  2004, a 25-page computer-generated report identifying all California WinCo employees who

11  utilized, "for the period requested,"[3] the Family Medical Leave Act (FMLA) to obtain leaves of

12  absences for (1) pregnancy disability and/or (2) the birth or adoption of a child. Ehrlich Decl., at

13  p. 2, ¶ 7; Attchmt. 4, p. 1. On August 23 and 25, 2004, in response to further inquiry from

14  EEOC, WinCo stated that it reserved or created modified "light-duty" positions only for

15  employees with *work-related* injuries and, if WinCo was unable to accommodate such

16  employees, they (unlike employees with nonwork-related disabilities) could obtain Total

17  Temporary Disability benefits from Workers' Compensation.[4] Ehrlich Decl., at p. 2, ¶¶ 8, 9;

18  Attchmt. 6, 7.

19  \\\\\\

20

21       [2] According to WinCo, it was willing to provide Armijo rights under the federal Family
22  Medical Leave Act and similar state law despite the laws' requirements that she work more than
    twelve months and 1,250 hours, which she had not.

23       [3] Neither EEOC nor WinCo provide the dates for which this information was requested
24  or provided.

25       [4] WinCo's "Modified Work/Workers Compensation" policy provides that Winco "shall
    have the right to implement and maintain a modified worker program for those employees
26  temporarily restricted from performing their regular duty due to an *on the job* injury or illness."
    Ehrlich Decl., Attchmt. 3, p. 3 (emphasis added).

1           On August 31, 2004, EEOC requested a list of all California WinCo employees

2    who, after June 2003, were given light-duty positions lasting longer than one month as a result of

3    a work-related injury.  On September 10, 2004, WinCo responded with information only from its

4    Folsom store (asserting objections based on overbreadth, lack of foundation and irrelevance),

5    identifying thirty-two employees who sustained work-related injuries between January 12, 2004

6    and August 28, 2004, twelve of whom participated in the modified work program.  Ehrlich Decl.,

7    at p. 4, ¶¶ 11, 12; Attchmts. 8, 9, 12.

8           On November 8, 2004, the EEOC issued its first subpoena, seeking the same

9    information it sought August 31 as to *all* of WinCo's California employees.[5]  Ehrlich Decl., at p.

10   4, ¶ 14; Attchmt. 11.  WinCo reiterated its objections (verbally on December 13, 2004, and in a

11   letter dated December 23, 2004) to the scope of the EEOC's investigation but nonetheless

12   complied with the subpoena.  Id., ¶ 15, Attchmt. 12.

13          In its December 23, 2004 letter, WinCo sought clarification as to the scope of

14   EEOC's investigation.  Ehrlich Decl., Attchmt. 12. p. 1.

15          In a letter dated February 8, 2005, EEOC requested that WinCo identify each

16   employee at any WinCo facility that had taken pregnancy leave during the period December 2002

17   to present.  Ehrlich Decl., at p. 4, ¶ 16; Attchmt. 13.  WinCo objected on grounds of relevancy,

18   privacy, overbreadth and undue burden.  Id., at p. 5, ¶ 17, 18; Attchmts. 14 and 15.

19          On June 9, 2005, the EEOC issued the instant Administrative Subpoena No. SF-

20   05-054.  Ehrlich Decl., at p. 5, ¶ 19; Attchmt. 16.  The subpoena seeks "all documents which

21

22       [5]  The subpoena sought "all documents which state, describe, constitute, refer to, or relate
in any way to the following:

23       1.  For each WinCo employee in California that has been given a light duty

24   position lasting longer than 30 days as a result of an on-the-job injury at any time
during the period June 2003 to September 2004:

25       a.  Name, position title, store location;
    b.  The employee's restrictions;

26       c.  The job description for their light duty assignment;
    d.  The dates of their assignment to light duty."

state, describe, constitute, refer to, or relate in any way to the following:

    1.  For each employee of any WinCo facility[6] that has taken pregnancy leave at any time during the period December 2002 to present:

       a.  Name, position title, store location;
       b.  Dates of leave;
       c.  Copies of the leave request form and any other documents related to the request;
       d.  Medical documentation of the employee's restrictions;
       e.  Last known home address and telephone number."

On June 24, 2004, the date for production, WinCo filed formal objections to the subpoena on the grounds it is (1) overly broad as to time and scope, (2) unduly burdensome and oppressive as it would require reviewing employee medical files for documentation of restrictions in addition to rendering appropriate redactions, (3) employee privacy rights, and (4) lack of relevance.

        EEOC filed this action on November 4, 2005.

II.  STANDARDS

        "The scope of the judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow.  The critical questions are:  (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation. . . . If these factors are shown by the agency, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome."  E.E.O.C. v. Children's Hospital Medical Center of Northern California, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc) (citations omitted); cited with approval in E.E.O.C. v. Karuk Tribe Housing Authority, 260 F.3d 1071, 1076 (9th Cir. 2001).

\\\\\
\\\\\
\\\\\

---

     [6] Consistent with EEOC's first subpoena (see n. 4), the court construes the request for information contained in the challenged subpoena to encompass all *California* WinCo facilities.

III.  <u>ANALYSIS</u>

      A.  <u>TIMELINESS OF OBJECTIONS</u>

         EEOC contends initially that WinCo failed to exhaust its administrative remedies by failing timely to object to the subpoena, thereby waiving any objections.  EEOC relies on 29 C.F.R. § 1601.16(b), which provides that, "Any person served with a subpoena who intends not to comply *shall* petition the issuing Director or petition the General Council, if the subpoena is issued by a Commissioner, to seek its revocation or modification. . . . within five [business] days . . . after service of the subpoena" (emphasis added).[7]  WinCo filed its objections with EEOC thirteen business days after service of the subpoena.

         WinCo argues persuasively that the regulation is not jurisdictional, although neither party cites, and this court has not found, any case within the Ninth Circuit that addresses the matter.  WinCo relies on <u>E.E.O.C. v. Lutheran Social Services</u>, 186 F.3d 959, 961 (C.A.D.C. 1999), wherein the Court of Appeals rejected the same arguments presented by EEOC herein.  As explained in <u>Lutheran Social Services</u>, the mandatory language of 29 C.F.R. § 1601.16(b) is

---

[7]  29 C.F.R. § 1601.16(b) provides in full (emphasis added):

(b)(1) Any person served with a subpoena who intends not to comply *shall* petition the issuing Director or petition the General Council, if the subpoena is issued by a Commissioner, to seek its revocation or modification.  Petitions must be mailed to the Director or General Council, as appropriate, within five days (excluding Saturdays, Sundays and Federal legal holidays) after service of the subpoena.  Petitions to the General Counsel shall be mailed to 1801 L Street, NW., Washington DC 20507.  A copy of the petition shall also be served upon the issuing official.

(2) The petition shall separately identify each portion of the subpoena with which the petitioner does not intend to comply and shall state, with respect to each such portion, the basis for noncompliance with the subpoena.  A copy of the subpoena shall be attached to the petition and shall be designated "Attachment A."  Within eight calendar days after receipt or as soon as practicable, the General Counsel or Director, as appropriate, shall either grant the petition to revoke or modify in its entirety or make a proposed determination on the petition, stating reasons, and submit the petition and proposed determination to the Commission for its review and final determination.  A Commissioner who has issued a subpoena shall abstain from reviewing a petition concerning that subpoena.  The Commission shall serve a copy of the final determination on the petitioner.

1   inconsistent with the discretionary language of its authorizing statute, 29 U.S.C. § 161, which

2   provides that a subpoenaed party *may* petition the issuing Board to revoke a subpoena.[8]  (This

3   statute and regulation expressly refer to the National Labor Relations Board but apply to the

4   EEOC in Title VII actions pursuant to 42 U.S.C. § 2000e-9.[9])  Finding that EEOC "has no power

5   to strip federal courts of authority to determine whether the subpoena the agency seeks to enforce

6   is lawful," the court held that compliance with 29 C.F.R. § 1601.16(b) is not jurisdictional

7   although its "mandatory language creates a strong presumption that issues parties fail to present

8   to the agency will not be heard in court."  Id., at 962, 964.  The court emphasized, however, that

9   "no categorical bar prevents us from considering whether the facts surrounding [the subpoenaed

10  party's] failure to file a section 1601.16(b)(1) petition constitute circumstances sufficiently

11  extraordinary to defeat this presumption."  Id., at 964.  The court excused the failure of the

12  subpoenaed party to file timely objections based on the following circumstances:  (1) lack of

13  notice of the five-day deadline on the face of the subpoena or by reference, (2) lack of awareness

14  of the deadline by EEOC's own investigator, and (3) the fact that the subpoenaed party had

15  consistently objected to EEOC's requests for information.

16          WinCo asserts that the circumstances presented here, like those in Lutheran Social

17  Services, excuse any failure of WinCo to file its objections within five days of service of the

18  subpoena.  The facts of this case are analogous, and the balance of factors weighs strongly in

19  WinCo's favor.  First, the challenged subpoena provides no notification of the five-day rule nor,

20

21          [8]  29 U.S.C. § 161 provides in pertinent part, "Within five days after the service of a
22  subpoena on any person requiring the production of any evidence in his possession or under his
    control, such person *may* petition the Board to revoke, and the Board shall revoke, such subpoena
23  if in its opinion the evidence whose production is required does not relate to any matter under
    investigation, or any matter in question in such proceedings, or if in its opinion such subpoena
24  does not describe with sufficient particularity the evidence whose production is required."
    (Emphasis added.)

25          [9]  42 U.S.C. § 2000e-9 provides, "For the purpose of all hearings and investigations
26  conducted by the Commission or its duly authorized agents or agencies, section 161 of Title 29
    shall apply."

1   for that matter, any citation to any legal authority.  Second, EEOC does not refute WinCo's

2   assertion that "EEOC never contacted WinCo after it served its objections to notify WinCo of

3   any compliance issue or failure to exhaust."  Opposition, at p. 10.  Finally, WinCo has

4   consistently objected, both verbally and in writing, to EEOC's information requests and WinCo's

5   formal written objections to the challenged subpoena, like those in Lutheran Social Services,

6   were served on the date for which production was demanded, long before the filing of this

7   enforcement action.

8           In contrast, none of the cases cited by EEOC involve defendants who lodged

9   objections prior to the EEOC's filing of an enforcement action.  See E.E.O.C. v. Cuzzens of

10  Georgia, Inc., 608 F.2d 1062, 1064 (5th Cir. 1979) (respondent's failure to administratively

11  assert *any* objections to an EEOC subpoena was an "utter abandonment of normal agency

12  procedures," and respondent "may not thereafter challenge the subsequent judicial enforcement

13  of that subpoena for any reason short of objections based on constitutional grounds"); E.E.O.C.

14  v. Hennepin County, 623 F. Supp. 29, 31 (D.C.Minn. 1985) (relying on Cuzzens, enforced

15  subpoena where defendant never sought its revocation or modification, did not challenge the

16  subpoena on constitutional grounds, and did not question the relevancy of the information

17  requested but merely declined to produce personnel records absent a court order); and E.E.O.C.

18  v. Roadway Express, Inc., 569 F. Supp. 1526, 1528 (D.C.Ind. 1983) (also relying on Cuzzens, the

19  court rejected respondent's unsupported statement that administrative challenge to the subpoena

20  would be futile, and precluded respondent from raising any defenses to the subpoena's judicial

21  enforcement).  Further, none of these cases examine the inconsistencies between 29 C.F.R. §

22  1601.16(b) and its authorizing statute, 29 U.S.C. § 161.  The court also finds its significant that

23  EEOC chose not to revisit this issue in its reply brief to WinCo's opposition.

24          Accordingly, applying the analysis set forth in Lutheran Social Services, the court

25  finds no administrative exhaustion requirement with which WinCo failed to comply and no

26  \\\\\

1  waiver of WinCo's objections to the challenged subpoena.  The court now turns to the merits of

2  those objections.

3             B.  <u>RELEVANCE</u>

4             EEOC seeks the names, positions, and store locations of all California WinCo

5  employees (see n. 6, supra) who have taken pregnancy leave during the period December 2002 to

6  present, each employee's dates of leave and supporting documentation, the medical

7  documentation of their restrictions, and their last known home addresses and telephone numbers.

8  WinCo has already provided the names, positions and store locations of California employees

9  who took leaves of absences for pregnancy or the birth of a child at any time during the period

10  December 2002 to August 2004.  See Attachment 4 to Ehrlich Decl.

11             The parties do not dispute the validity of the contested subpoena, only its scope.

12  EEOC has the authority to obtain "any evidence of any person being investigated or proceeded

13  against that relates to unlawful employment practices . . . and is relevant to the charge under

14  investigation." 42 U.S.C. § 2000e-8(a).  This authority has been broadly interpreted.  "Since the

15  enactment of Title VII, courts have generously construed the term 'relevant' and have afforded

16  the Commission access to virtually any material that might cast light on the allegations against

17  the employer." <u>E.E.O.C. v. Shell Oil Company</u>, 466 U.S. 54, 68-69, 104 S. Ct. 1621,1631 (1984)

18  (footnote omitted).  If the evidence sought by a valid subpoena is relevant and material, "the

19  subpoena should be enforced unless the party being investigated proves the inquiry is

20  unreasonable because it is overbroad or unduly burdensome." <u>Children's Hospital</u>, 719 F.2d at

21  1428.

22             WinCo broadly asserts the information sought by EEOC is irrelevant because

23  WinCo's policy of providing modified work duties only to employees with work-related injuries

24  is not discriminatory *per se*, as recently held in <u>Reeves v. Swift Transportation Company, Inc.</u>,

25  446 F.3d 637 (6th Cir. 2006) (employer's policy of providing light duty work only to employees

26  injured on the job is "pregnancy blind" and therefore not discriminatory under the Pregnancy

9

Disability Act); accord, Spivey v. Beverly Enterprises, Inc., 196 F.3d 1309 (11th Cir. 1999);

Urbano v. Continental Airlines, Inc.,138 F.3d 204 (5th Cir.1998);[10] but see, E.E.O.C. v.

Horizon/CMS Healthcare Corp., 220 F.3d 1184 (10th Cir.2000); Ensley-Gaines v. Runyon, 100

F.3d 1220, 1222 (6th Cir.1996).  The Ninth Circuit has not ruled on this issue but, even had it,

WinCo's substantive defense would not necessarily defeat the subpoena.  A defense against an

administrative complaint is not *res ipsa* a defense against a subpoena.  Endicott Johnson Corp. v.

Perkins, 317 U.S. 501, 509, 63 S. Ct. 339, 343 (1943).  "'[A] party may not defeat agency

authority to investigate with a claim that could be a defense if the agency subsequently decides to

bring an action against it.'" Karuk Tribe Housing Authority, 260 F.3d at 1076, quoting

Children's Hospital,  719 F.2d at 1429 (premature to address res judicata effect of consent decree

that might bar any suit arising from the investigation).  Rather, "courts must enforce

administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or

irrelevant to any lawful purpose of the agency." Karuk Tribe Housing Authority, 260 F.3d at

1076 (citations and internal quotations omitted).  The court finds, therefore, that WinCo's

anticipated substantive defense does not defeat or narrow the scope of the challenged subpoena.

WinCo asserts alternatively that the information sought is overly broad because it

is irrelevant to Ms. Armijo's private discrimination claim.  EEOC responds that Ms. Armijo's

suit necessarily encompasses broader consideration of WinCo's pregnancy disability leave policy

and the implementation of that policy on a case-by-case basis.  EEOC maintains the investigation

is relevant to determine whether (1) WinCo's light duty policy is a *per se* violation of the PDA,

(2) WinCo treats pregnant women differently from non-pregnant individuals with temporary

work-related or nonwork-related disabilities, and (3) WinCo's modified work program has a

---

[10]  WinCo also relies on EEOC's own enforcement guidelines which state in pertinent
part, "An employer need not create a light duty position for a non-occupationally injured
employee with a disability as a reasonable accommodation" (EEOC Enforcement Guidelines:
Workers' Compensation and the ADA (Question 27 (Light Duty)).  However, as EEOC points
out, this guideline references the ADA, not Title VII.

1  disparate impact on pregnant women.  EEOC further claims it needs to investigate whether some

2  pregnant employees have been subjected to anti-pregnancy bias or denied modified work

3  assignments despite suffering work-related injuries.

4          The court finds these issues, and the information essential to their resolution,

5  relevant both to Ms. Armijo's claim and to EEOC's attendant and necessary investigation

6  whether WinCo's "Pregnancy Disability Accommodation Policy" violates the Pregnancy

7  Disability Act either *per se* or in practice.  It is the responsibility of the discovery judge to permit

8  disclosure if "the information sought appears reasonably calculated to lead to the discovery of

9  admissible evidence." Fed. R. Civ. P. 26(b)(1).  "'This rule is be considered broadly, to include

10 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any

11 issue that is or may be in the case.'"  Pagano v. Oroville Hospital, 145 F.R.D. 683, 689

12 (E.D.Cal.1993), quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380,

13 2389, 57 L.Ed.2d 253 (1978).  Further, in the context of enforcement proceedings for the

14 production of information in administrative proceedings, courts are required to authorize such

15 production as long as the requests are "reasonably relevant" to the subject of the investigation.

16 United States v. Morton Salt Co., 338 U.S. 632, 652, 70 S. Ct. 357, 368-369 (1950).  The

17 challenged subpoena is not overbroad.

18          C.  THIRD PARTY PRIVACY INTERESTS

19          WinCo resists disclosure of its employees' personnel and work-related medical

20 files, asserting that EEOC has not demonstrated a compelling need for their disclosure.  EEOC

21 contends there is no privacy privilege that protects third party information from disclosure to a

22 federal agency because civil and criminal penalties attach to unauthorized disclosure, thus

23 obviating the need for a protective order.

24          WinCo, as custodian of its employees' personnel and work-related medical

25 records, has standing to assert its employees' privacy rights.  Cook v. Yellow Freight System,

26 Inc., 132 F.R.D. 548, 551, n. 2 (E.D.Cal.1990).  However, as this court has previously concluded,

11

1   "the compelling interest analysis, as applied to complex privacy issues, is overly restricting" in

2   the discovery context.  Rather, the following factors must be considered: "(1) the probable

3   encroachment of the individual's privacy right if the contested action is allowed to proceed, and

4   the magnitude of that encroachment; (2) whether the encroachment of the privacy right would

5   impact an area that has traditionally been off limits for most regulation; (3) whether the desired

6   information is available from other sources with less encroachment of the privacy right; (4) the

7   extent to which the exercise of the individual's privacy rights impinge on the rights of others; and

8   (5) whether the interests of society at large encourage a need for the proposed encroachment."

9   Pagano v. Oroville Hospital, 145 F.R.D. 683, 698–699 (E.D.Cal. 1993).[11]

10          Analysis of these factors in the present case demonstrates that disclosure of the

11   contested information would (1) encroach upon the privacy rights of individual WinCo

12   employees but not significantly, as intrusion upon personnel records is limited to the dates and

13   supporting documentation of pregnancy-related leaves of absences, and medical information is

14   limited to documentation supporting such absences;[12] (2) however, disclosure of employee names

15   and contact information is unnecessarily intrusive, leaving the door open for government "cold

16   calls" to private individuals regarding their employment and medical histories, the latter an area

17   traditionally off limits to government inquiry; (3) the requested information is not otherwise

18   available; (4) nondisclosure would unreasonably foreclose EEOC's efforts to assure equitable

19   treatment for pregnant employees; and (5) disclosure furthers the interests of society at large.

20   These factors support disclosure of the information sought with the exception of the names (some

21   of which have already been provided and must now be protected as set forth below) and contact

22   information of the impacted employees.

23

24          [11]  Contrary to the *ipse dixit* assertions of several district courts, Pagano has never been
     expressly, or impliedly overruled by any higher authority.

25

26          [12]  These limiting factors also dispense with WinCo's argument that compliance with the
     subpoena would be overly burdensome.

1       Disclosure shall therefore be subject to the safeguards accorded by the following

2 protective order.  EEOC's assertion a protective order is unwarranted because unauthorized

3 disclosure of the information is subject to civil and criminal penalties[13] is not persuasive.  Rather,

4 in deference to the WinCo employees whose personal information will be examined and

5 released, the court makes the following protective order.

6 IV.  PROTECTIVE ORDER

7       WinCo shall compile and release to EEOC the information sought by

8 Administrative Subpoena No. SF-05-054, subject to and conditioned upon the following

9 protections:

10       1.  All identifying and contact information for WinCo employees shall be omitted,

11 and each employee shall be referenced by individual code;

12       2.  Counsel shall not disclose any documents received or information contained

13 therein to anyone except as defined in paragraph 4.

14       3.  Documents are to be designated as "CONFIDENTIAL - SUBJECT TO

15 PROTECTIVE ORDER."  Stamping the legend "CONFIDENTIAL" on  the cover of any

16 multipage document shall designate all pages of the document as confidential, unless otherwise

17 indicated by the producing party.  All information personal to WinCo employees that has already

18 been produced shall also be subject to this Protective Order and so designated.  Testimony taken

19 at a deposition, conference, and hearing may be designated as confidential by making a statement

20 to that effect on the record at the deposition or other proceeding.  Arrangements shall be made

21 with the court  reporter taking and transcribing such proceeding to separately bind such portions

22 of the transcript containing information designated as confidential, and to label such portions

23 appropriately.

24 _____

25 [13] .  See 42 U.S.C. § 2000e-8(e); Valley Industrial Services, Inc. v. E.E.O.C., 570 F.Supp. 902, 907 (N.D.Cal.1983) (prior to the filing of suit, a protective order is unnecessary absent a showing that a violation of confidentiality is likely to occur or the statutory remedy is

26 inadequate).

1    4.  Confidential material/documents shall not be copied except as is necessary for

2   use in this case, and shall be used exclusively in connection with this investigation.

3    5.  Confidential Material produced pursuant to this order may be disclosed or

4   made available only to *court* and *court personnel* as are necessarily incidental to preparation for

5   trial and/or hearing (should this case so proceed), to *counsel for a party* (including the paralegal,

6   clerical, and secretarial staff employed by such counsel), and to the "*qualified persons*" that

7   follow:

8    (a)    an employee of a party deemed necessary, on a need to know basis, by
        counsel to aid in the prosecution, defense, or settlement of this action;
9
        (b)    experts or consultants (together with their clerical staff) retained by such
10       counsel to assist in the prosecution, defense, or settlement of this action;

11    (c)    court reporter(s) (other than court employees) employed in this action; and

12    (d)    any other person as to whom the parties in writing agree.

13    Except for EEOC employees who will be presumed to know of this order, prior to

14   receiving any Confidential Material, each "qualified  person" shall be provided with a copy of

15   this order and shall execute a nondisclosure agreement in the form of Attachment A.

16    6.  The foregoing is without prejudice to the right of any party:

17    (a)    to apply to the court for a further protective order relating to discovery in
        this litigation;
18
        (b)    to apply to the court for an order removing the Confidential Material
19       designation from any information and/or documents; and

20    (c)    to apply to the court for an order compelling production of documents or
        modification of this order permitting disclosure of confidential or coded
21       material beyond the terms of this order.

22    7.  Any subject document filed with the court shall be filed under seal, labeled

23   with a cover sheet as follows: "CONFIDENTIAL MATERIAL UNDER PROTECTIVE

24   ORDER."  Documents so labeled shall be kept under seal and shall be made available only to the

25   court, including court personnel as are necessarily incidental to preparation for trial and/or

26   hearing, or counsel.  Upon failure of the filing party to file a subject document under seal, the

1  producing party may request that the court place the filing under seal.  This paragraph shall apply

2  only to instances where confidential material is filed for the purposes of pre-trial and in-limine

3  proceedings.  This paragraph shall not, without further order of the court, apply at trial.

4          8.  If documents subject to this order are used during the course of a deposition in

5  this case, only the court reporter and those persons who are authorized by the terms of this order

6  to receive such material may be present during the portion of such depositions where the

7  information is discussed.  If Confidential Material, including any portion of a  deposition

8  transcript designated as Confidential, is included in any papers to be filed in court, such papers

9  shall be labeled  "CONFIDENTIAL MATERIAL UNDER PROTECTIVE ORDER," and filed

10 under seal until further order of this court.

11         9.  At the conclusion of the trial or any appeals, or upon other termination of this

12 litigation, all documents subject to this agreement that remain in defendant's possession,

13 including the possession of any of his employees and counsel, shall be returned to plaintiff's

14 counsel, except that one copy of such documents may be maintained by defense counsel for the

15 period required by law, at which time the remaining copy will be returned or destroyed.

16         10.  The provisions of this protective order shall remain binding on all persons

17 subject to the terms of this protective order until further order of this court.

18 DATED: 9/7/06

19                                              /s/ Gregory G. Hollows

20                                              _____

21                                              GREGORY G. HOLLOWS
                                                U. S. MAGISTRATE JUDGE
22

NOW6: WinCo0486.ord
23

24

25

26

15

1

<u>ATTACHMENT A</u>

2

NONDISCLOSURE AGREEMENT

3

4          I, _____ do solemnly swear that I am fully familiar

5   with the terms of the Protective Order entered in E.E.O.C. v. WinCo Foods Inc., Commission

6   Charge No. 376-2004-00521,  Misc. Civil Action No. S-05-0486 GEB GGH, and hereby agree to

7   comply with and be bound by the terms and conditions of said Order unless and until modified

8   by further Order of the Court.  I hereby consent to the jurisdiction of said Court for purposes of

9   enforcing the Order.

10  Dated_____

11

12                                                              /s/_____

13

14

15

16

17

18

19

20

21

22

23

24

25

26